HUGH A. CARNEY *vs.* COLD SPRING BREWING COMPANY.

COLD SPRING BREWING COMPANY *vs.* JOHN J. MINOT.

Middlesex. Essex.   October 5, 1939. — November 28, 1939.

Present: FIELD, C.J., LUMMUS, QUA, DOLAN, & COX, JJ.

*Practice, Civil,* Exceptions: whether saved, what is subject of exception.

A bill of exceptions in an action heard without jury, containing a statement by the judge setting forth his general finding and his denial of the losing party's requests for rulings, followed by a recital that that party excepted to "the above finding," did not show any exception properly saved to the denial of the requests.

In an action heard without jury upon an auditor's report and other evidence, an exception to the judge's general finding did not raise the question whether the finding was warranted by the evidence.

TWO ACTIONS OF CONTRACT, the first originally brought by John J. Minot and afterwards prosecuted by his assignee. Writ in the first action in the Superior Court dated March 11, 1935; writ in the second action in the District Court of Lawrence dated March 23, 1935.

Upon removal of the second action to the Superior Court, the actions were heard together by an auditor and afterwards by *M. Morton*, J., who found for the plaintiff in the first action and for the defendant in the second action. Cold Spring Brewing Company alleged exceptions.

*J. A. Donovan & J. M. Hargedon,* (*W. J. Greenler, Jr.,* with them,) for Cold Spring Brewing Company.

*H. A. Carney,* for John J. Minot and another.

Cox, J.   These two cases were first tried together before an auditor whose findings of fact were not final, and then before a judge of the Superior Court, sitting without jury, upon the auditor's report and other evidence.   In the first case the plaintiff, as assignee of John J. Minot, hereinafter referred to as Minot, seeks to recover certain loans made by Minot to the Cold Spring Brewing Company, hereinafter referred to as the company, and also for certain commissions, compensation, and damages arising out of the alleged breach of a contract of employment between Minot and the company.   In this case the company alleges in its answer that it is entitled to recoup certain damages alleged to have been occasioned by the violation by Minot of his contract, and also to recoup certain expenses incurred in an audit of the company's books, and certain sums paid to counsel on account of the alleged misconduct of Minot.   The company, as plaintiff in the second case, seeks to recover for money had and received by Minot to the company's use, the items of the account annexed covering, in general, amounts alleged to have been received by Minot from the company's customers and not accounted for.

In the first case the auditor found that Minot was employed by the company, whose principal place of business was in Lawrence, to secure a warehouse in Boston, and to act as its general manager and bookkeeper in the warehouse at a weekly salary; that Minot secured a warehouse that was satisfactory to the officers of the company, took charge as general manager and bookkeeper, made it suitable for the conduct of the company's business, hired employees, and acted as such general manager and bookkeeper from November 1, 1934, to March 9, 1935, when he was discharged; that from about November 1, 1934, until his discharge Minot "with the knowledge and consent of the defendant corporation, was allowed full and complete authority as general manager and bookkeeper in operating the business at the warehouse . . . and that, as such general manager

and bookkeeper, he was answerable only to the board of directors of the defendant corporation"; that no restrictions were placed on his authority at any time by the board of directors and no directions as to his management of the business were ever issued by the board "other than the plan or outline of organization and duties which was promulgated December 17, 1934, and agreed to by the plaintiff Minot and the defendant corporation"; that "while this outline of organization and duties . . . was agreed to on December 19, 1934, by both the plaintiff Minot and the defendant corporation, . . . the plaintiff Minot was allowed from that time on until his discharge in March 1935 to carry on the business as general manager and bookkeeper, observing certain provisions of said outline, and disregarding others, as he saw fit, and that no action was ever taken by defendant's board of directors at any time during this period to enforce the provisions of said outline of organization." The auditor also found that Minot collected the moneys brought in by salesmen, making entries of the same on the books of the company and on a private ledger which he kept himself, and at times made changes on the sales slips brought in by the salesmen, deposited in the company's bank account checks and some of the money that the salesmen brought in from the sale of merchandise and placed most of the cash in a tin box which he kept for this purpose; that the company had no knowledge of the changes on the sales slips, of the private ledger or the tin box; that when the business was established at the warehouse, no money was advanced by the company and Minot "had to work along with his own funds as best he could, together with the moneys which came in from the sale of ale from time to time"; that Minot, while acting as general manager, entered into an agreement with one Kelley for the transportation of ale from the defendant's brewery in Lawrence to the warehouse in Boston and to the various customers; that he also entered into an agreement with another concern for the rental of certain motor vehicles; that these motor vehicles and their various drivers whom the plaintiff hired were used in the delivery of the defendant's merchandise;

and that "both of said agreements operated for the benefit of said defendant, as it appeared in the operation of said agreements and the hiring of the drivers that the defendant's merchandise was transported and delivered as aforesaid."

The auditor found for the plaintiff on most of the items in the declaration alleged to represent loans. He also found that Minot was entitled to no commissions, compensation or damages. On the matter of recoupment he found that "the contracts relative to transportation of defendant's merchandise were entered into and used for the benefit of the defendant corporation's business as carried on at said warehouse." As to the conversion of moneys and the falsifying of books, he found that, "where moneys were retained by the plaintiff Minot and entries thereof made on the private ledger, or in any books of the defendant, said moneys so retained were all used in the payment of various bills incurred in operating the said defendant corporation's business at its warehouse and that said contracts and bills were all for the benefit of the defendant corporation in operating its business at said warehouse." He also found that the company was not entitled to anything by way of recoupment for the expense of an alleged audit of the company's books at the warehouse or for the expense of counsel employed in connection with the alleged misconduct of Minot.

In the second case the auditor found that, in so far as Minot received the various amounts alleged to have been collected and not accounted for, they were expended by him in the payment of the bills of the company which were contracted in the usual course of business at the warehouse where Minot was the general manager and bookkeeper, and he found for the defendant.

The trial judge found the facts to be as found by the auditor and found for the plaintiff in the first case in the sum found by the auditor, together with interest to December 1, 1938. In the second case he found for the defendant. He filed a statement of his findings, at the conclusion of which he stated: "The requests for findings and the requests for rulings of the Cold Spring Brewing Company are denied." The only exception appearing in the

record is: "To the above finding the Cold Spring Brewing Company, defendant in one case and plaintiff in the other, duly excepted."

We are of the opinion that no exception was properly saved by the company to the denial of its requests for rulings. It is settled that a party cannot raise the question whether a finding is warranted by the evidence by an exception to the general finding or decision taken after it is made. *Stowell* v. *H. P. Hood & Sons, Inc.* 288 Mass. 555, and cases cited. *Looby* v. *Looby*, 303 Mass. 391, and cases cited. But if it be assumed that the company saved its exceptions to the denial of its requests, nevertheless we are of the opinion that such denial was not prejudicial error. Several of them are requests for findings of fact rather than for rulings of law; some of them could not have been given in view of the specific findings of fact made by the auditor and adopted by the judge, and those that related to the matter of recoupment were rendered immaterial by reason of the finding that the company had not been damaged. The burden of proving damages in recoupment was on the company, and, in recoupment, a defendant establishes a defence to the plaintiff's claim only to the extent to which he proves damages. *Roche* v. *Gryzmish*, 277 Mass. 575, 579. *Bank of United States* v. *Thomson & Kelly Co.* 290 Mass. 224, 228.

*Exceptions overruled.*