DINWIDDIE CONSTRUCTION CO., a Corporation, Appellant, *v.* VERNA C. CAMPBELL, STEPHEN J. CAMPBELL, N. O. BERRY, JAMES R. DUTTON, and VERNA C. CAMPBELL and STEPHEN J. CAMPBELL, as Trustees of Christopher Campbell Trust, Respondents.

No. 4891

October 4, 1965                    406 P.2d 294

*Woodburn, Forman, Wedge, Blakey, Folsom and Hug,* and *Richard O. Kwapil, Jr.,* of Reno, and *Howard, Prim, Smith, Rice and Downs,* of San Francisco, for Appellant.

*Orville R. Wilson,* of Elko, for Respondents.

**OPINION**

By the Court, BADT, J.:

This appeal presents the question of the correct measure of damages for an innocent or non-willful taking of diatomaceous earth from a mineral claim of the rightful owner. It also involves a placing of the burden of proof as to the value of said ore and the deductible expenditures of defendant which may be considered in mitigation of damages.

Finally, we are concerned with two procedural questions: First, the admissibility for review of evidence first offered *after* judgment. Appellant introduced this evidence accompanying a request for an order vacating judgment. The order was denied and no appeal was taken. Nevertheless, appellant now seeks consideration of that accompanying evidence in his appeal here from the judgment.

Secondly, we consider the standing of a defendant to protest the alleged mis-naming of a co-defendant. This co-defendant is not appealing, nor is there any question as to the liability of either party. Appellant simply is concerned that the "mis-naming" will affect appellant's rights under a "save harmless" clause in an asserted contract with such other party not named as a defendant. No cross-claim is involved.

We proceed to the disposition of all of these questions in the inverse order in which they are named, irrespective of the fact the disposition of one or more of the questions may dispose of the entire appeal.

The points raised will be clearer from a brief recital of the facts and a reference to the pleadings.

Respondents sued Dinwiddie Construction Company, a corporation, and George E. Miller Construction Co., Inc., a corporation, thereafter and hereinafter referred to as Miller, alleging the removal by defendant Miller, which was alleged to be at the time a sub-contractor of defendant Dinwiddie, for the purpose of completing a contract of the said Dinwiddie, and with the knowledge and consent of said Dinwiddie, and under its orders and direction. Defendants filed a joint answer, with a general denial and the following affirmative defense: *"Defendants* (emphasis added) during the years 1959 and 1960 did remove certain diatomaceous earth for use on target Bravo 16, pursuant to a contract with the United States Navy." Trial was had upon the issues thus raised and the court made findings of respondents' ownership of their mining claims in the W½ of Section 11, T. 17 N., R. 27 E.; that certain lands in the E½ of Section 11 were thereafter withdrawn from entry, for use of the Navy as an aerial bombing range; that respondents' claims in the W½ of Section 11 were never withdrawn from entry and their ownership was maintained through the performance of annual assessment work and continued possession and work upon said claims, including the drilling of two holes, one 75 feet deep and one 60 feet deep, and their marking of the boundaries of the claims. The Navy had in the past mined certain diatomaceous earth from respondents' claim No. 1 and paid for the same at an agreed price. In 1963 respondents mapped their said claim and duly recorded the map in the office of the county recorder of Churchill County, being the county in which the said claims were located. Upon learning of the taking of the diatomaceous earth by the defendants, plaintiffs, respondents herein, promptly asserted their claims to the Navy and to the officers and agents of the defendants.

Plaintiffs' complaint alleged that during 1959 and

1960 Dinwiddie was the primary contractor with the Department of Navy for the construction of the bombing ranges and that Miller was the sub-contractor of Dinwiddie to construct portions thereof, including the creation of targets by the use of diatomaceous earth, and that during the performance of said sub-contract Miller was at all times under the direct order and control of Dinwiddie, and the diatomaceous earth was taken with the knowledge and consent of Dinwiddie; also that the plans as prepared by the Navy for the use and direction of Dinwiddie erroneously outlined the bombing range as including the W½ of said Section 11; and that a Navy inspector designated to Miller the excavation theretofore made by the Navy as the place where the Navy had taken diatomaceous earth. The court further found that Miller or his employees could have observed the monuments establishing the corners and center posts of the claims in question, but that Miller relied upon its right to remove the diatomaceous earth on the mistaken premise that the site of removing the same was in the area withdrawn for Navy use; that Miller mined the earth solely from plaintiffs' Wild Horse Claim No. 1 situate entirely in the W½ of said Section 11, and in such trespass the defendants converted to their own use 2,050 tons of diatomaceous earth of the value of $8.20 per ton in place, prior to the incurring of costs of mining the same, and that such trespass was not willful. Pursuant to such findings, judgment was entered against Dinwiddie (Dinwiddie Construction Co.) and Miller (George E. Miller Construction Co., Inc.) jointly and severally in the sum of $16,810.00, with interest and costs.

Dinwiddie and Miller moved for a new trial, which was denied. Thereupon the present substituted attorneys for appellant moved on behalf of Dinwiddie alone to vacate the judgment, which motion was likewise denied. As noted above, Dinwiddie alone appealed from the judgment. No appeal was taken from either the denial of the motion of Dinwiddie and Miller for a new trial or the denial of the motion of Dinwiddie to vacate the judgment.

1. In support of the motion to vacate the judgment, which motion was made by Dinwiddie alone through its substituted attorneys, Dinwiddie submitted a copy of a sub-contract between it and George E. Miller personally. As noted, such motion, and the motion for new trial, were denied. Although no appeal was taken from such denial, said sub-contract was made a part of the record in Dinwiddie's appeal from the judgment alone. No cross-claim had been filed against George E. Miller personally and no motion or affirmative defense was raised upon the ground of misjoinder or nonjoinder of parties and was at no time asserted prior to the entry of judgment. Patently the sub-contract was relevant only to the motion to modify the judgment.[1] Not only is this clear from the record, but in the affidavit of Richard O. Kwapil, Jr., in support of the motion to modify the judgment, we find the following:

"That the sub-contract agreement on the job in question was between DINWIDDIE CONSTRUCTION COMPANY and GEORGE E. MILLER personally; that thereafter GEORGE E. MILLER, personally, caused GEORGE E. MILLER CONSTRUCTION COMPANY to do the actual work on the job, but the sub-contract was still in full force and effect." Dinwiddie predicates its appeal from the judgment on the contention that it had a sub-contract with George E. Miller, an individual, which contained a "hold harmless clause," which he would be unable to pursue under the judgment as rendered against it and the asserted sub-contractor. This is without merit. In Gensler-Lee v. Geertson, 73 Nev. 328, 318 P.2d 1113, judgment was obtained against Gensler-Lee, a sublessor of certain premises. Appellant maintained that a verdict against Gensler-Lee only could not be sustained without a verdict against its sublessor and against the owner of the premises. Appellant contended: "They were guilty if Gensler-Lee was guilty." The sublease in evidence provided that the

---

[1]The motion for new trial did not include the ground of subsequently discovered evidence of which it could not have reasonably known at the time of trial, namely, the existence of such sub-contract between Dinwiddie and George E. Miller personally.

sublessee should hold the sublessor free from liability. This court there said: "In the second place it does not appear that Gensler-Lee is aggrieved by that part of the jury's verdict which absolved its sublessor or the owner. If they were joint tortfeasors with appellant, there would be no right of contribution among them. [citation] Mrs. Geertson might have sued any one of them without joining the others." In the present instance Campbell could have sued either Dinwiddie, George E. Miller (if shown to be the sub-contractor), or Miller Construction Company, by whom the work was done.

Under this situation we might summarily sustain the judgment without more ado. However, by reason of the earnestness displayed by the briefs and oral argument, we think it advisable to dispose likewise of the other grounds raised by appellant Dinwiddie.

2. In the foregoing discussion we have virtually disposed of the relevancy of the sub-contract offered in support of the motion to vacate the judgment, to the appeal from the judgment itself. We desire to reinforce this, however, by well-recognized authority construing the provisions of NRCP which provide for a "designation of contents of record on appeal," and is intended to insure that enough of the proceedings below will be brought before this court to enable it to determine the question properly raised. In re Visking Corporation, 134 F.2d 1013 (4th Cir. 1943), discussing federal rule (FRCP) 75, which is virtually identical with NRCP 75; Paramount Film Distributing Corp. v. Civic Center Theatre, 333 F.2d 358 (10th Cir. 1964); Sheridan-Wyoming Coal Co. v. Krug, 168 F.2d 557 (D.C.Cir. 1948); Brennan v. Hawley Products Co., 182 F.2d 945 (7th Cir. 1950). The rationale of these cases seems to be that the motion to vacate the judgment in effect "disappeared" upon its undisputed denial, leaving matters as if the motion never had been made. Under this rationale, evidence submitted in support of the post-judgment motion would "disappear" with the motion and thus not be available for review on the appeal from the judgment. A second rationale for refusing review

of post-judgment matters on appeal from the judgment
is found in Gray v. Amerada Petroleum Corp., 145 F.2d
730 (5th Cir. 1944), where the court attacked the ex
parte matters of such last-minute insertions, saying:
"[T]his is a mere ex parte statement filed months after
the entry of the judgment, and it constitutes no part of
the record."

3.   The measure of damages was discussed at length
in the briefs and in the oral argument. A complete
annotation may be found in 21 A.L.R.2d 382. It refers
to two main rules (1) the "harsh rule" and (2) the
"mild rule." The "harsh rule" is applied where the tres-
pass is willful or in bad faith. The trial court found
the instant trespass to be· non-willful and no cross-
appeal was taken by respondents. It becomes unneces-
sary to discuss it. We may remark, however, that such
finding is amply supported by the evidence.

The "mild rule," applied where the trespass is inad-
vertent or not willful or not in bad faith, fixes the
damages as the value of the minerals in place. Where
such value is ascertainable, the question of mining costs
becomes irrelevant, but where such evidence cannot be
obtained, the methods used to establish the value of
the ore in place are either (1) the royalty method, or
(2) the value after the ores have been extracted, less
production costs. Appellants here assert the propriety
of applying the royalty method, citing cases in support.
The A.L.R. annotation referred to (21 A.L.R.2d), at
page 384, refers to only three jurisdictions in which
the royalty method or test has been applied. These are
Arkansas, Kentucky and Virginia. It is said, id. 389,
that the royalty method was applied "prior to the deci-
sion in Hughett v. Caldwell County (1950), 313 Ky.
85, 230 S.W.2d 92, 21 A.L.R.2d 373, but that such rule
had been clearly limited by Hughett v. Caldwell County
which showed that such rule originated in a case where
the owner had no feasible way of extracting the min-
eral except through the trespasser's opening, thus pre-
senting a clear case where royalty was due and proper
compensation, but held that under conditions where it

is practicable to establish the value of the ore at the mouth of the mine or pit, "that is the measure of his pecuniary loss and should be his compensation," and "that the correct measure of damage in recovery was the reasonable market value of the fluorspar after it had been mined, less the reasonable cost incurred by the defendant in mining it." The conclusion of the writer of the annotation was that Hughett v. Caldwell County "overruled former opinions in which there were similar circumstances and conditions and which applied the royalty test." This was followed in later Kentucky cases. This leaves, at most, only Arkansas and Virginia subscribing to the royalty test while a score of jurisdictions expressly hold the only proper measure of damage should be the market value, less the cost of extracting and marketing it. We adhere to such rule. It has the additional virtue of not giving the trespasser profits resulting from the unlawful conversion, in addition to permitting him to recoup his costs of mining and extracting the minerals.

The record in this case does not show that appellant offered any evidence of the costs of mining. Indeed, we are left without any picture of how the mining was done—whether the ore was "knocked down," or "picked down," or by the familiar method of drilling a round of holes in the face of the ore body and blasting the ore down.[2]

4. Appellant contends that the burden of proof was upon the plaintiffs throughout the case, to prove not only that they were damaged but the actual amount of such damage. It is true that, generally speaking, the

[2]Miller did indeed testify that it cost $2.50 to "remove" the earth and that this figure included "a loader in the pit." He stated that this was an estimated amount, "to transport it and bring it to the site." Whether the "loader" was a man or a machine is not clear. In any event, this item compares reasonably with the $1.50 moving expense to which plaintiffs' expert Smith testified as being in addition to the $8.20 value. Miller's testimony, if given any weight by the court, would still have justified the trial court's finding of a value of $8.20 per ton to be a reasonable value after taking into consideration defendant's alleged mitigation.

person injured is entitled to compensation commensurate with his loss. In addition to proving the infringement of his legal right, the injured person must prove the amount or items of damage suffered by him. Steiner v. Long Beach Local No. 128, etc., 19 Cal.2d 676, 123 P.2d 20, 27, and see Peterson v. Wiesner, 62 Nev. 184, 146 P.2d 789, and Cladianos v. Friedhoff, 69 Nev. 41, 240 P.2d 208. Expert witness Smith, on behalf of respondents, definitely testified to the value of the ore in place at $8.20 per ton, and its value "in the truck," as $9.70 per ton, moving expenses constituting the additional $1.50. This in itself supports the court finding of $8.20 per ton as the correct measure of plaintiffs' damages.

Nor does it appear from the cases that there is any substantial deviation from the rule that the defendant has the burden of proving any claimed recoupment or mitigation. Burr v. Clark, 30 Wash.2d 149, 190 P.2d 769 (1948) ; Sturgeon v. Phifer (Wyo.), 390 P.2d 727 (1964) ; Carney v. Cold Spring Brewing Co., 304 Mass. 392, 23 N.E.2d 1000 (1939).

On all counts we are compelled to hold that appellant's assertions of error are without merit. The judgment is affirmed with costs.

THOMPSON, J., and ZENOFF, D. J., concur.