CENTRAL BIT SUPPLY, INC., a Nevada Corporation, Appellant, v. WALDROP DRILLING & PUMP, INC., a Washington Corporation, Respondent.

No. 15884

April 9, 1986 717 P.2d 35

[Rehearing denied May 28, 1986]

*Julian C. Smith, Jr.*, Carson City, for Appellant.

*Erickson, Thorpe, Swainston & Cobb; Lawrence D. Wishart;* and *Martin H. Wiener*, Reno, for Respondent.

## OPINION

*Per Curiam:*

This is an appeal from a judgment for Waldrop Drilling & Pump, Inc. (Waldrop) arising out of the purchase of an eighteen-inch hole opener (drill bit) from Central Bit Supply, Inc. (Central Bit). Issues addressing both the theory of liability and the amount of damages awarded were presented. We have concluded that Central Bit may be held liable on a theory of breach of warranty; however, because we have also concluded that the trial court erred in calculating the amount of damages, we affirm the judgment in part and reverse and remand in part.

On September 3, 1981, Waldrop purchased a drill bit from Central Bit. The drill bit was used to widen water wells to the appropriate diameter after a pilot hole had been drilled to the required depth. Waldrop was using the drill bit to open a water well at the Almanor West subdivision in September of 1982 when two of the four drill cones broke off and lodged in the pilot hole. The drill bit had been used on two prior occasions without incident.

The drill bit failed at approximately the 135 foot level. The cones lodged in the pilot hole at the 210-225 foot level which made any further drilling impossible unless the cones could first be removed from the hole. Waldrop's employees attempted to "fish" the cones from the hole for three or four days before the hole was abandoned. A new well was successfully completed about six feet from the abandoned hole after Thomas Waldrop and another employee drove nonstop to Oregon to purchase another drill bit.

Waldrop then brought suit against Central Bit alleging that Waldrop suffered damages as a result of the drill bit failure. Waldrop based its claim for damages on the theories of strict products liability, negligence, and breach of express and implied warranties. After a trial without a jury, the district court found that Central Bit was liable for damages based on all three theories and that Waldrop had suffered consequential damages in the amount of $20,535. It is from this decision that Central Bit appeals.

Central Bit contends that Waldrop suffered only economic loss; therefore, the judgment in favor of Waldrop was in error. It is true that a plaintiff may not recover economic loss under theories

of strict products liability or negligence. *See* Local Joint Exec. Bd. v. Stern, 98 Nev. 409, 410-411, 651 P.2d 637 (1982). However, purely economic loss may be recovered under a breach of warranty theory. *See* Hiles Co. v. Johnston Pump Co., 93 Nev. 73, 79, 560 P.2d 154 (1977). Therefore, the judgment in favor of Waldrop may be supported on this theory alone.

There was substantial evidence presented at trial to support the district court's findings that Central Bit made both express and implied warranties and, then, breached those warranties. There was also substantial evidence presented to support the finding that Waldrop did not alter or misuse the drill bit. Therefore, we will not disturb the judgment in favor of Waldrop on appeal. *See* Udevco, Inc. v. Wagner, 100 Nev. 185, 678 P.2d 679 (1984).

We conclude, however, that the district court erred in its assessment of damages. Therefore, we reverse the damage portion of the judgment and remand this case to the district court in order that damages may be awarded in a manner consistent with this opinion.

When a seller breaches express or implied warranties, a buyer may recover "the difference at the time and place of acceptance between the value of the goods accepted and the value they would have had if they had been as warranted. . . ." NRS 104.2714(2). The buyer may also recover consequential damages so long as those damages result "from general or particular requirements and needs [of buyer] of which the seller at the time of contracting had reason to know[1] and which could not reasonably be prevented by cover[2] or otherwise. . . ." NRS 104.2715(2)(a). In the case at bar, the district court awarded consequential damages only. Specifically, the district court stated:

> [S]aid damages include the cost of drilling a second well as a result of loss of the first in the amount of $19,200; $320 for lost income to Plaintiff while trying to fish the broken bit out of the well; $400 for the costs of a trip to Oregon to obtain a new bit to replace the broken one; and an allowance of $615 toward the cost of the new bit which was purchased by Plaintiff from an Oregon supplier.

---

[1]This is a requirement that the seller must have reasonably foreseen the possibility of consequential damages. *See* Gerwin v. Southeastern Cal. Ass'n of Seventh Day Adv., 92 Cal.Rptr. 111 (Cal.App. 1971). This test of foreseeability is akin to that first expressed in the well-known case of Hadley v. Baxendale, 156 Eng. Rep. 145 (1854). *See* Frank B. Bozzo, Inc. v. Electric Weld Division, 423 A.2d 702 (Pa.Super.Ct. 1980), *aff'd,* 435 A.2d 176 (Pa. 1981.)

[2]A buyer "covers" by "making in good faith and without unreasonable delay any reasonable purchase of or contract to purchase goods in substitution for those due from the seller." NRS 104.2712(1).

Additionally, the burden of establishing damages lies on the injured party, Waldrop. *See* Dinwiddie Constr. Co. v. Campbell, 81 Nev. 469, 406 P.2d 294 (1965). Waldrop need not prove its damages with mathematical precision; it need only establish a reasonable basis for ascertaining those damages. *See* Bader v. Cerri, 96 Nev. 352, 609 P.2d 314 (1980).

Based on the foregoing explanation of the applicable law, we turn now to the damage award in the case at bar. The district court found that Waldrop was entitled to recover $19,200 in damages as a consequence of the forced abandonment of the first well. It appears that the district court reasoned that since Waldrop spent twelve days on the second well and was paid $19,200, Waldrop should receive a like amount for the loss of the first well on which Waldrop also spent approximately twelve days. This award is obviously incorrect. Waldrop was paid at a contract rate of $48 per foot drilled. Because the second well reached a depth of 400 feet, Waldrop received $19,200. The abandoned well only reached a level of 135 feet. Had Waldrop been compensated for the partial well at the contract rate, Waldrop would have received only $6,480. To award Waldrop damages equal to drilling 400 feet when, in fact, Waldrop only drilled 135 feet would result in overcompensation.

As to the remaining elements of the damage award, we conclude that the district court did not err. Waldrop did indeed lose four days of Thomas Waldrop's services; therefore, Waldrop is entitled to receive $320 for the lost services while Thomas Waldrop was fishing out the first well and traveling to Oregon.[3] Also, the $400 allowed for the trip to Oregon to purchase the replacement bit was proper as a foreseeable consequential expense caused by the breaking of the first bit. Finally, while the trial court would have been more correct had it awarded Waldrop the difference between the value of the drill bit as accepted and the value of the drill bit had it been as warranted, the $615 allowance toward the cost of a new bit was not in error. We therefore remand this case to the district court for a reevaluation of damages in accordance with the views expressed in this opinion.

---

[3]Even though Waldrop paid Thomas Waldrop no salary in 1982, Waldrop did establish that Thomas Waldrop's services were worth $80 per day to Waldrop.