BRADLEY P. ELLEY AND LINDA D. ELLEY, APPEL-LANTS, *v.* E. DUANE STEPHENS AND PATRICIA M. STEPHENS, COUNTY OF WASHOE, RESPONDENTS.

No. 18086

August 25, 1988                    760 P.2d 768

*D. G. Menchetti,* Incline Village; *Cartwright, Sucherman and Slobodin,* San Francisco, California, for Appellants.

*Erickson, Thorpe, Swainston and Cobb,* Reno; *Mills Lane,* District Attorney, and *Thomas F. Riley,* Deputy, Washoe County, for Respondents.

414

## OPINION

*Per Curiam:*

### THE FACTS

Duane and Patricia Stephens owned a vacant lot at Incline Village, upon which they intended to build a vacation home. They met with an Incline Village contractor, who provided them with several models of prefab houses. The Stephenses selected one and had the contractor build or assemble the prefab house, including the deck and railing. The house was the first the Stephenses had built.

Although their vacation house was completed in 1973, the Stephenses never lived in it, and that same year they sold it to a Robert and Muriel Hall. In June, 1985, the appellants, Bradley and Linda Elley, purchased the house.[1] A month later, Bradley Elley fell over or through the railing of the house's deck, suffering injury. The Elleys sued the Stephenses and Washoe County, alleging the following five causes of action: (1) strict products liability, (2) breach of implied warranty, (3) negligence, (4) negligent inspection, and (5) willful misconduct. The Elleys

[1]We were informed, at oral argument, that as many as four intervening owners may have purchased the house before the Elleys.

sought relief from the Stephenses through all causes of action except negligent inspection; they sought relief from Washoe County through causes of action four and five.

Respondents filed motions for summary judgment, which the district court granted. The Elleys appeal.

## DISCUSSION

The house, including deck and railing, was finished in 1973. Twelve years later, Mr. Elley suffered his injuries and, thereafter, filed his action, alleging that the Stephenses' and County inspectors' negligence caused his injury. The district court concluded that the negligence and negligent inspection claims were barred by the NRS 11.203 ten-year statute of repose, and that the Elleys did not have standing to challenge its constitutionality. We agree.

NRS 11.203 requires that a personal injury action against an owner or person constructing a house be brought within ten years of completion of the house if the injury results from a known construction deficiency. The Elleys argue, however, that NRS 11.203 does not bar their lawsuit because the statute is unconstitutional, violating the equal protection clause.

In State Farm v. All Electric, Inc., 99 Nev. 222, 660 P.2d 995 (1983), we held that the then-existing NRS 11.205 violated the equal protection clause of the United States Constitution. At the time, the statute read as follows:

> 1. No action in tort, contract or otherwise shall be commenced against any person performing or furnishing the design, planning, supervision or observation of construction, or the construction, of an improvement to real property more than 6 years after the substantial completion of such an improvement, for the recovery of damages for:
> (a) Any deficiency in the design, planning, supervision or observation of construction or construction of such an improvement; or
>     . . . .
> (c) Injury to or wrongful death of a person caused by any such deficiency.

We concluded that this statute violated the equal protection clause because it arbitrarily protected architects and contractors from actions arising after the statute had run, but left exposed others similarly situated, such as owners and manufacturers of supplies. *State Farm,* 99 Nev. at 226-29, 660 P.2d at 997-1000.

After *State Farm,* the legislature revised NRS 11.205, adding two previously excluded classes in an attempt to remedy the constitutional defect, and enacted NRS 11.203. NRS 11.203 provides:

[N]o action may be commenced against *the owner, occupier* or any person performing or furnishing the design, planning, supervision or observation of construction, or the construction of an improvement to real property more than 10 years after the substantial completion of such an improvement, for the recovery of damages for:

(a) Any deficiency in the design, planning, supervision or observation of construction or the construction of such an improvement which is known or through the use of reasonable diligence should have been known to him;

. . . .

(c) Injury to or the wrongful death of a person caused by any such deficiency.

NRS 11.203 (emphasis added). The Elleys argue that these changes are not sufficient to avoid the problem noted in *State Farm,* and that NRS 11.203 violates the equal protection clause.

Even assuming, arguendo, that NRS 11.203 is unconstitutionally underinclusive, as appellants contend, the district court correctly determined that the Elleys do not have standing to challenge its constitutionality. In the context of an action of the type here present, a requirement of standing is that the litigant personally suffer injury that can be fairly traced to the allegedly unconstitutional statute and which would be redressed by invalidating the statute. Valley Forge Christian College v. Americans United for Separation of Church and State, 454 U.S. 464, 472 (1982).

In an irrelevant sense, the Elleys are injured by the workings of NRS 11.203. Their lawsuit against the County is barred because of the operation of that statute. Moreover, if we were to grant the remedy they seek and strike the statute, their injuries would, in a sense, be redressed. Importantly, however, the Elleys' injuries are not a result of the statute's underinclusiveness. The Elleys are not members of one of the classes who are excluded from the protection afforded by the statute of repose, and who would benefit from a statute with broader reach. If the statute were totally inclusive, as they argue it need be, they would still be barred from bringing their action. Accordingly, they are merely remote parties who are looking for some way—any way—to avoid the application of the statute of repose in order to circumvent summary judgment. However, their injuries have nothing to do with the statute's alleged unconstitutionality, and therefore, the necessary nexus between injury and constitutional violation is missing. As a result, appellants are asserting someone else's

potential legal problem; they are not the proper party to assert this alleged constitutional violation. The district court, therefore, correctly determined that the Elleys did not have standing.

Appellants contend that even if they do not have standing to challenge the constitutionality of NRS 11.203, and even if NRS 11.203 does not violate the equal protection clause, NRS 11.203 does not apply to their causes of action against the County. They argue that if the legislature intended County inspectors, as well as owners, occupiers, etc., to fall within the statute's reach, it would have expressly so provided. The district court concluded, however, that by using the language "any person performing . . . supervision or observation of construction," the legislature intended to also cover County officials conducting post-constructive inspections. In so concluding, the court did not err.

The legislative history preceding enactment of NRS 11.203 does not specifically indicate whether the legislature intended to cover County inspectors in the statute. However, the legislative history does suggest that when the legislature enacted the revised statute of repose, they intended it to be as broad as possible so that it would not again be found unconstitutional. The limited history available suggests that some of the members of the legislature understood that the revised statutes were intended to be as broad as possible in their coverage. Accordingly, by interpreting the language "any person . . . performing . . . supervision or observation of construction" to cover County building inspectors, the district court was in accord with legislative intent, to the extent it can be discerned. Therefore, the district court correctly concluded that NRS 11.203 barred the Elleys' negligent inspection cause of action against the County.

The Elleys also argue that the district court improperly dismissed their strict product liability action against the Stephenses. The district court concluded:

> The claims which the plaintiffs assert against these moving defendants cannot be sustained under the color of a strict products liability or breach of warranty cause of action. Given the nature of the defendant's activity, I am of the opinion that this cause of action is more appropriately founded in negligence. . . .

Appellants argue that the district court erred because the Stephenses are retail sellers of a product, and therefore a strict liability action can be maintained against them.

We have held that an end user of a product has established a cause of action in strict liability against a manufacturer or distrib-

utor when "his injury is caused by a defect in the product, and [the user proves] that such defect existed when the product left the hands of the defendant." Shoshone Coca-Cola Bottling v. Dolinski, 82 Nev. 439, 443, 420 P.2d 855, 858 (1966). However, even if we assumed, arguendo, that a prefab house is a product subject to the law of strict products liability,[2] a strict liability theory is not applicable to an occasional seller of a product, who does not, in the regular course of his business, sell such a product. See, e.g., Restatement (Second) of Torts § 402(a) (1965);[3] Prosser and Keaton on Torts 705 (5th ed. 1984) ("Only a seller who can be regarded as a merchant or one engaged in the business of supplying goods of the kind involved in the case is subject to strict liability, whether on warranty or in tort."); Bailey v. ITT Grinnell Corp., 536 F.Supp. 84, 87 (N.D. Ohio 1982) ("[S]trict tort liability is not an appropriate theory of liability for application to the occasional seller); Lemley v. J & B Tire Co., 426 F.Supp. 1376, 1377 (W.D. Penn. 1977) ("The plaintiffs cannot prevail on their [strict liability cause of action] because the defendants . . . are not sellers engaged in the business of selling such a product.").

The Stephenses are unquestionably occasional sellers, hardly qualifying as retailers or manufacturers of homes. Strict liability theory does not apply to such sellers. Therefore, the district court's conclusion that the Elleys, as a matter of law, could not maintain a strict liability cause of action against the Stephenses was not erroneous.

Finally, the Elleys claim that the district court erred by dismissing their causes of action alleging that the Stephenses and

---

[2]Courts are divided about whether a home is a product under strict liability theory. Annotation, Recovery, Under Strict Liability in Tort, for Injury or Damage Caused by Defects in Building or Land, 25 A.L.R.4th 351 (1983).

[3]Restatement (Second) of Torts § 402(A)(1) provides:

> One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer . . . if
> (a) the seller is engaged in the business of selling such a product. . . .

Comment (f) to § 402(A) notes:

> The rule stated in this section . . . does not, however, apply to the occasional seller of . . . products who is not engaged in that activity as part of his business. Thus it does not apply to the housewife who, on one occasion, sells to her neighbor a jar of jam or a pound of sugar. Nor does it apply to the owner of an automobile who, on one occasion, sells it to his neighbor, or even sells it to a dealer in used cars. . . . [H]e is not liable to a third person, or even to his buyer, in the absence of his negligence.

County were guilty of willful misconduct. They argue that NRS 11.202[4] generally provides that actions for injuries resulting from willful misconduct can be brought at any time, and that accordingly, this cause of action would not be barred by NRS 11.203. However, in order to avoid summary judgment, the Elleys needed to show that a material issue of fact existed about willful misconduct. The record reveals no evidence supporting appellants' allegations that the Stephenses or the County engaged in willful misconduct. Accordingly, the district court did not err by dismissing these causes of action on summary judgment.

For the reasons noted above, and after consideration of all arguments presented, we affirm the judgment of the district court.

---

[4]NRS 11.202 provides:

1. An action may be commenced against the owner, occupier or any person performing or furnishing the design, planning, supervision or observation of construction, or the construction of an improvement to real property at any time after the substantial completion of such an improvement, for the recovery of damages for:

(a) Any deficiency in the design, planning, supervision or observation of construction or the construction of such an improvement which is the result of his willful misconduct or which he fraudulently concealed:

. . . .

(c) Injury or the wrongful death of a person caused by any such deficiency.