NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA., a Pennsylvania Corporation, Appellant, v. PRATT AND WHITNEY CANADA, INC., AND PIPER AIRCRAFT CORPORATION, Respondents.

No. 20781

July 24, 1991                                        815 P.2d 601

*Miles Pico & Mitchell* and *Gary L. Myers,* Las Vegas; *Kern & Wooley* and *Jonathan S. Morse,* Los Angeles, California, for Appellant.

*Gifford & Vernon,* Las Vegas, for Respondent Pratt and Whitney.

*Wait & Shaffer,* Reno, for Respondent Piper Aircraft.

# OPINION

By the Court, STEFFEN, J.:

Appellant National Union Fire Insurance Company (National Union) filed a subrogation action against respondents Pratt and Whitney Canada, Inc. (PWC) and Piper Aircraft Corporation (Piper) for recovery of payments made to its insureds for losses resulting from the crash of an airplane. National Union sought relief under theories of negligence, strict products liability, and warranty.

The district court, having determined that there were no disputed material issues of fact, granted summary judgment against National Union. The lower court concluded, as a matter of law, that tort damages were unavailable because National Union sought recovery for purely economic loss resulting from the airplane self-destructing. PWC and Piper were also awarded attorney's fees pursuant to both NRS 18.010 and 17.115[1] National Union, claiming error in each of the district court's rulings, appeals. Our review of the record persuades us that the judgment below was correct except as to the computation of attorney's fees; we therefore affirm in part and reverse in part.

## Facts

PWC manufactured and sold to Piper two Model PT6A-28 engines used on the Model PA-31T Cheyenne II (Cheyenne) aircraft which was the subject of the litigation between the parties to this appeal. Piper designed, manufactured, assembled, and sold the Cheyenne originally to Airline Training Center (ATC) of San Diego, California. ATC later sold the plane to Nevada National Leasing Corporation (Nevada National Leasing), which thereafter leased the plane to Vegas Vic, Inc. dba Famous Pioneer Club (Pioneer). Pioneer obtained a policy of insurance from National Union which insured the Cheyenne against loss or damages.

On February 8, 1984, the Cheyenne took off from Bullhead City, Arizona. One of the PWC engines failed, and the airplane crashed in the Nevada desert. National Union paid its insured $534,766.45 for the total loss of the plane and the costs of its recovery. National Union then filed a subrogation complaint, shortly thereafter amended, against PWC and Piper for recovery of the losses paid to its insured. Theories of recovery asserted by National Union included tort claims for negligence and strict

---

[1]PWC also requested and was granted its expert witness fees.

products liability and a contract claim based upon warranty. The warranty claim was later dropped.

*Discussion*

We note preliminarily that the constraints under which we review an entry of summary judgment are well-established. First, in a light most favorable to the appellant, we must determine whether issues of material fact exist thus precluding judgment by summary proceeding. Second, assuming our review confirms the absence of such factual issues, we must determine "whether the law has been correctly perceived and applied by the district court." Mullis v. Nevada National Bank, 98 Nev. 510, 512, 654 P.2d 533, 535 (1982). Because our review confirmed that there are no genuine issues of material fact, the issue of moment on appeal is whether the district court correctly determined that National Union sought and was lawfully precluded from recovering damages in tort for a purely economic loss.[2]

National Union concedes that purely economic losses usually are not recoverable under tort theories of negligence and strict liability. *See* Central Bit Supply v. Waldrop Drilling, 102 Nev. 139, 717 P.2d 35 (1986); Local Joint Exec. Bd. v. Stern, 98 Nev. 409, 651 P.2d 637 (1982). Nevertheless, we are urged to accept the argument that the defective PWC engine damaged property other than the engine itself—namely, the rest of the airplane— thus avoiding application of the economic loss rule adopted in *Stern,* reaffirmed in *Central Bit Supply,* and relied upon by the district court.

National Union contends that Oak Grove Inv. v. Bell & Gossett Co., 99 Nev. 616, 668 P.2d 1075 (1983), is both apposite and supportive of its position. In *Oak Grove,* however, there was little factual basis for invoking the economic loss doctrine. Indeed, rather than receding from our rulings in *Stern* and *Central Bit Supply,* we concluded, by way of dictum, that the factual scenario in *Oak Grove* did not implicate the economic loss doctrine because it involved a defective heating and plumbing system that

---

[2]Economic losses have been defined as: "The loss of the benefit of the user's bargain, that is, the loss of the service the product was supposed to render, including loss consequent upon the failure of the product to meet the level of performance expected of it in the consumer's business." Am.LawProd.Liab.3d, *Damages for Economic Loss,* § 60:19 (1987).

Moreover, we need not reach the issue of whether National Union would be able to proceed under a warranty theory. National Union dropped that theory of liability in the proceedings below, and the issue is not before this court on appeal.

caused water leakage and damage throughout the apartment complex. It was thus clear that, in contrast to the instant case, *Oak Grove* did not involve a single integrated product that "injured itself." The apartment complex there consisted of a number of separate apartment units that were each self-contained and constructed for the separate occupancy of the end users. Indeed, this court has not yet entered the fray among courts as to whether even a "house" constitutes a product for purposes of the law of strict products liability, let alone an entire apartment complex. *See* Elley v. Stephens, 104 Nev. 413, 418, 760 P.2d 768, 771 (1988). We deem it safe to conclude, however, that the economic loss doctrine was never intended to apply to construction projects that reflect the products and efforts of so many different manufacturers, laborers, crafts, supervisors and inspectors in the creation of an essentially permanent place of habitation. On the other hand, as will be noted in greater detail hereafter, commercial products that may, for whatever reason, injure themselves are readily insured and suitable for inclusion within the economic loss doctrine.

In a well-reasoned admiralty case, a unanimous United States Supreme Court expressed what is essentially the basis for our ruling in the instant case. The factual predicate for the court's decision in East River S.S. Corp. v. Transamerica Delaval, 476 U.S. 858, 860 (1985), involved a defective firststage steam reversing ring within one of the ship's turbines that had nearly disintegrated. The defective component damaged the turbine. Thus, although the ship itself was not damaged, property other than the defective component was damaged. *Id.* at 860. The court denied liability, stating:

> When a product injures only itself the reasons for imposing a tort duty are weak and those for leaving the party to its contractual remedies are strong.
>
> The tort concern with safety is reduced when an injury is only to the product itself. When a person is injured, the "cost of an injury and the loss of time or health may be an overwhelming misfortune," and one the person is not prepared to meet. *Escola v. Coca Cola Bottling Co.,* 24 Cal.2d at 462, 150 P.2d at 441 . . . . In contrast, when a product injures itself, the commercial user stands to lose the value of the product, risks the displeasure of its customers who find that the product does not meet their needs, or, as in this case, experiences increased costs in performing a service. Losses like these can be insured. *See* 10A G. Couch, Cyclopedia of Insurance Law §§ 42:385-42:401, 42:414-417 (2d ed. 1982); 7 E. Benedict, Admiralty, Form No. 1.16-7, p. 1-239 (7th ed. 1985); 5A J. Appleman & J. Appleman,

Insurance Law and Practice § 3252 (1970). Society need not presume that a customer needs special protection. The increased cost to the public that would result from holding a manufacturer liable in tort for injury to the product itself is not justified. Cf. *United States v. Carroll Towing Co.*, 159 F.2d 169, 173 (CA2 1947).

*Id.* at 871-72.

We recognize that the PWC engine was a defective component part of the Piper airplane. Therefore, the engine arguably destroyed not only itself, but other property as well, i.e., the entire airplane. We nevertheless hold that National Union is not entitled to tort damages. As the *East River S.S. Corp.* court also observed, "[s]ince all but the very simplest of machines have component parts, [a contrary] holding would require a finding of 'property damage' in virtually every case where a product damages itself. Such a holding would eliminate the distinction between warranty and strict products liability." *Id.* at 867 (quoting Northern Power & Engineering Corp. v. Caterpillar Tractor Co., 623 P.2d 324, 330 (Alaska 1981)). We agree with the reasoning of the United States Supreme Court.[3]

---

[3]Other courts have denied recovery in negligence, strict products liability, or both when a component damages the product itself. *See, e.g.,* Aloe Coal Co. v. Clark Equipment Co., 816 F.2d 110 (3d Cir. 1987) (applying Pennsylvania law; recovery of damages to tractor shovel caused by fire would be limited to the law of warranty); Kaiser Aluminum & Chemical v. Ingersoll-Rand Co., 519 F.Supp. 60. (S.D. Ga. 1981) (applying Georgia law; damage to air compressor caused by defective fracture of inlet guide vane, a component part); Wuench v. Ford Motor Co., 104 Ill.App.3d 317, 432 N.E.2d 969 (1982) (automobile damaged in accident because of a broken seal); St. Paul Fire & Marine Ins. v. Steeple Jac, 352 N.W.2d 107 (Minn. App. 1984) (automatic window washer was damaged because defective component was an economic loss not recoverable in tort); Sharp Bros. v. American Hoist & Derrick Co., 703 S.W.2d 901 (Mo. 1986) (crane destroyed when its counterweight broke and crushed the crane's cab); Continental Ins. v. Page Engineering Co., 783 P.2d 641 (Wyo. 1989) (dragline damaged when reeving block failed and boom fell).
Moreover, Dean Page Keeton has written:

A distinction should be made between the type of "dangerous condition" that causes damage only to the product itself and the type that is dangerous to other property or persons. A hazardous product that has harmed something or someone can be labeled as part of the accident problem; tort law seeks to protect against this type of harm through allocation of risk. In contrast, a damaging event that harms only the product should be treated as irrelevant to policy considerations directing liability placement in tort. Consequently, if a defect causes damage limited solely to the property, recovery should be available, if at all, on a contract-warranty theory.

Keeton, *Torts,* 32 Sw. L.J. 1, 5 (1978).

The original purchaser of the Cheyenne airplane did not purchase an airplane engine and thereafter install the engine on the plane. Rather, as in the typical situation involving commercial products, the buyer acquired a single integrated product consisting of numerous component parts. Moreover, although the aircraft's warranty had expired prior to the time of its destruction, the owner had acquired and paid for insurance protection from National Union to cover the very eventuality that occurred. To allow National Union to recover for the occurrence of the risk for which it had been paid would be tantamount to extending the manufacturer's warranty with predictable results in the initial pricing of the product to the consumer. This we are unwilling to do.

We also reject National Union's contention that manufacturers should be liable when a product crashes calamitously or exposes plaintiffs to an unreasonable risk of harm, despite the absence of personal injury or damage to property other than the product itself. National Union would have this court distinguish between accidental or calamitous losses having the potential for human injury on the one hand, and purely economic losses on the other, and hold a manufacturer liable for the former. Although a minority of courts have held to the contrary, we decline to make this distinction. When injury to life or other property results from the use of a dangerously defective product, the law of strict products liability applies as a prophylactic and a basis for redress. When a product "injures itself" protection derived from the interplay of manufacturer's warranties and insurance supplies a generally adequate basis for consumer redress.

A major reason for denying liability in *Stern* was "to shield [the] defendant from unlimited liability for all of the economic consequences of a negligent act" and thus keep "the risk of liability reasonably calculable." *Stern,* 98 Nev. at 411, 651 P.2d at 638. Manufacturers will have difficulty calculating potential liability if it is to be determined by "the arbitrary factor of whether the purchaser noticed the gradual deterioration of a component part that, left unattended, could result in a calamitous occurrence." Continental Ins. v. Page Engineering Co., 783 P.2d 641, 648 (Wyo. 1989). Indeed, the United States Supreme Court has aptly stated:

> [This approach], which essentially turn[s] on the degree of risk, [is] too indeterminate to enable manufacturers easily to structure their business behavior. Nor do we find persuasive a distinction that rests on the manner in which the product is

injured. We realize that the damage may be qualitative, occurring through gradual deterioration or internal breakage. Or it may be calamitous. [Citations omitted.] *But either way, since by definition no person or other property is damaged, the resulting loss is purely economic. Even when the harm to the product itself occurs through an abrupt, accident-like event, the resulting loss due to repair costs, decreased value, and lost profits is essentially the failure of the purchaser to receive the benefit of its bargain— traditionally the core concern of contract law.*

*East River S.S. Corp.*, 476 U.S. at 870 (emphasis added). Moreover, the rule we adopted avoids any difficulty associated with distinguishing between an accidental and economic loss.[4] The district court did not err, therefore, when it granted summary judgment.

National Union also contests the district court's award of attorney's fees to PWC and Piper. When an award of attorney's fees is authorized, the amount thereof lies within the discretion of the trial court, and such an award will not be disturbed unless there is an abuse of discretion. Brunzell v. Golden Gate Nat'l Bank, 85 Nev. 345, 455 P.2d 31 (1969).

National Union argues the award of attorney's fees to respondents was unreasonable for three reasons: (1) the district court erroneously interpreted NRS 18.010; (2) the amount of the awards was unreasonable and capricious; and (3) under the circumstances of this case, the award is contrary to fairness and public policy.

NRS 18.010(2) reads: "In addition to the cases where an allowance is authorized by specific statute, the court may make an allowance of attorney's fees to a prevailing party . . . when he has not recovered more than $20,000 . . . ." A money judgment "is a prerequisite to an award of attorney's fees" under NRS 18.010(2)(a). Key Bank v. Donnels, 106 Nev. 49, 53, 787 P.2d

---

[4]It has been cogently observed that:

Making liability depend upon whether or not the loss results from an "accident" creates a difficult issue and arguably an irrelevant issue with respect to the validity of contract provisions allocating the risk of loss for harm to the defective product itself to the purchaser. Distinguishing "accidental" damage to the product from mere economic loss is difficult in many cases, such as a defect in a component of a television set that burns out the tubes, or an electric connection to the engine of a refrigerator that destroys the engine.

W. Keeton, Prosser and Keeton on the Law of Torts § 101 (5th ed. 1984).

382, 385 (1990). Because PWC and Piper did not obtain a money judgment, neither is entitled to attorney's fees under NRS 18.010(2)(a). However, the award of fees for expert witnesses was proper under NRS 18.005(5) and NRS 18.020(3) as well as NRS 17.115(4).

We must now determine whether the award of attorney's fees is sustainable under NRS 17.115. The trial court awarded fees pursuant to this statute based on National Union's rejection of two offers made by respondents. NRS 17.115(4) reads:

> *If the party to whom the offer of judgment is made fails to obtain a more favorable judgment,* he cannot recover:
> (a) Interest on the judgment for the period between the time of service of the summons and complaint and the time of entry of the judgment; or
> (b) Costs or attorney's fees,
> and *the court shall order him to pay to the party who made the offer that party's* taxable costs incurred from the date of filing the complaint, and may order also a reasonable sum to cover costs of the services of expert witnesses who are not regular employees of any party actually incurred and reasonably necessary in the preparation of the case for trial by the prevailing party, interest on the judgment from the time of the offer to the time of entry of the judgment and *reasonable attorney's fees incurred by the party making the offer from the time of the offer.*

(Emphasis added.) PWC made an offer of judgment in the amount of $25,000.00 on November 30, 1988. National Union did not accept the offer. PWC and Piper made a joint offer of judgment in the amount of $115,000.00 on August 24, 1989. National Union again rejected the offer.

The trial court stated in its orders granting respondents' motions for attorney's fees that it considered and weighed whether: (1) National Union's claim was brought in good faith; (2) respondents' offers of judgment were reasonable and in good faith in both their timing and amounts; (3) National Union's decision to reject the offers and proceed to trial was grossly unreasonable or in bad faith; and (4) whether the fees sought by the respondents were justified in amount. *See* Beattie v. Thomas, 99 Nev. 579, 668 P.2d 268 (1983) (factors considered in determining whether to award attorney's fees pursuant to NRCP 68). The court then found that the offers were reasonable in timing and amount, and that the amount of fees sought was reasonable. There was no explicit finding, however, that National Union's claim was not brought in good faith, or that it was unreasonable or reflective of bad faith not to accept the offers of judgment.

After reviewing the record, we conclude that the trial court was correct in awarding PWC and Piper their attorney's fees under NRS 17.115. The court erred, however, in determining the amount of attorney's fees it awarded PWC. A party is only entitled to its "reasonable attorney's fees incurred by the party making the offer from the time of the offer." NRS 17.115(4)(b). It appears that the amount of attorney's fees awarded to PWC includes an allowance for services performed from the beginning of the case.[5] This is not permissible under the dictates of NRS 17.115(4).

For the reasons stated above, we affirm the summary judgment entered below with the exception of the amount of attorney's fees awarded to PWC which, upon remand, must be redetermined by the district court in accordance with this opinion.

SPRINGER and YOUNG, JJ., concur.

ROSE, J., dissenting, with whom MOWBRAY, C. J., agrees:

The majority holds that a plaintiff who lost his entire airplane due to the malfunction of a defective compressor blade cannot recover from the manufacturer on a strict liability theory because such damage is an economic loss. I find this conclusion inconsistent with both Nevada case law on economic losses and with the reasoning in cases from other jurisdictions. For this reason, I dissent.

We have already considered why economic loss should not be recoverable in a strict products liability action and have indicated that it is a different type of loss than property damage.

> The doctrine of strict products liability was developed to assist plaintiffs who could not prove that products which caused physical injury at the point of use had been manufactured negligently. The doctrine is unavailable for purely economic loss; its application is limited to personal injury and property damage. Russell v. Ford Motor Co., 575 P.2d 1383 (Or. 1978); Morrow v. New Moon Homes, Inc., 548 P.2d 279 (Cal. 1965) (dicta); Rodrigues v. Campbell Indus-

---

[5]PWC, in its motion for attorney's fees, stated that it had incurred $55,951.00 in attorney's fees from the inception of the case on June 16, 1986. The trial court awarded PWC this amount pursuant to NRS 18.010 and 17.115.

PWC also represented that it had incurred $42,525.00 in attorney's fees from the time of the first Offer of Judgment on November 30, 1988. The amount it had incurred from the time of the Joint Offer of Judgment on August 24, 1989 was $17,835.00. Upon remand, we leave to the discretion of the district court the determination of which offer should be used to establish the date from which attorney's fees are to be calculated.

tries, 151 Cal.Rptr. 90 (Cal.App. 1978); Mid Continent Aircraft v. Curry Cty. Spraying Serv., 572 S.W.2d 308 (Tex. 1978); Restatement (Second) of Torts § 402A (1965).

Local Joint Exec. Bd. v. Stern, 98 Nev. 409, 411, 651 P.2d 637, 638 (1982).

And again in Oak Grove Inv. v. Bell & Gossett Co., 99 Nev. 616, 668 P.2d 1075 (1983), we stated that the recovery of property damage is permissible in a claim based on strict products liability.

> Strict liability applies to claims based on property damage as well as to personal injury cases. *See* Worrell v. Barnes, 87 Nev. 204, 484 P.2d 573 (1971); Rocky Mountain Fire & Cas. Co. v. Biddulph Oldsmobile, 640 P.2d 851, 855 (Ariz. 1982). *See also* Local Joint Exec. Bd. v. Stern, 98 Nev. 409, 751 P.2d 637 (1982). . . .

*Id.* at 625, 668 P.2d at 1080.

We later state that property damage is different than economic loss and while the former is recoverable, the latter is not.

> To guide the district court upon remand, however, we shall note that appellant alleged in both its strict liability and negligence causes of action that the defective plumbing and heating system caused ''substantial leakage of water throughout, and damage to, the apartment [sic] within the . . . complex.'' The amount of property damage sustained is a question for the finder of fact. Appellant is not seeking to recover purely economic losses, and therefore has stated causes of action in negligence and strict liability. *See* Local Joint Exec. Bd. v. Stern, *supra. See also* Hales v. Green Colonial, Inc., 490 F.2d 1015, 1022 (8th Cir. 1974); Russell v. Ford Motor Co., 575 P.2d 1383, 1387 (Or. 1978).

*Id.* at 625, 668 P.2d at 1081.

In *Oak Grove* and *Local Joint,* we clearly held that economic loss is something other than property damage. Economic losses include lost profits, lost productivity, lost wages, business expectations and other losses that flow from the loss of the things damaged by the defective product. However, a plaintiff is not precluded from recovering for loss caused to property on theories of negligence and strict liability. The majority ignores this very clear direction in our prior cases and now states that property damages are precluded when the product ''injures itself.'' I find that this distinction is contrary to our previous definition of ''economic loss'' and that it has little basis in reason. I see no reason to permit recovery on a strict products liability basis for damage to personal property, but to preclude it if the personal property has been incorporated with the defective component.

This distinction makes no sense because it ignores the possibility of great disparity in size and value between the component part and the whole. It is as arbitrary as the rule proposed by some legal theorists that property damages should be recoverable in products liability actions only when the plaintiff suffers an accompanying personal injury. Such a rule would mean that a plaintiff could recover for the loss of a million dollar airplane so long as the defect which destroyed the plane also caused the plaintiff to stub a toe. The modern trend is that courts have moved away from arbitrarily drawing lines to mark the break in the causation chain. We could have refrained from doing so in this case by following our prior case law, and drawing the line between property damage and economic loss.

Many courts have recognized that although plaintiffs in products liability actions should not recover for economic losses, they may recover personal property, which includes an entire product into which a defective part was incorporated. International Knights of Wine, Inc. v. Ball Corp., 168 Cal.Rptr. 301 (1980); Hiigel v. General Motors Corporation, 544 P.2d 983 (Colo. 1975); Santor v. A. & M. Karagheusian, Inc., 207 A.2d 305 (N.J. 1965). In these cases, the courts realized that there is no reason to distinguish between the different physical items that the defective product destroyed, and permit recovery for some but not for others. Therefore, the better rule is to permit recovery for a product destroyed by a defective component.

The majority opinion also observes that it would be inequitable to allow National Union to recover for the occurrence of a risk for which it had already been paid a premium. I am sure National Union was paid a premium for insuring the airplane. However, I would suspect that the rate structure upon which that premium was based took into account the fact that some losses would be eliminated or reduced by subrogation actions against third-party tortfeasors. Additionally, I think we should promote, rather than prohibit, recovery by people injured and their subrogees against the tortfeasor and its insurance carrier. An insurance company subrogated to the rights of an injured party should have the same rights as its insured and we should encourage its reimbursement from third-party tortfeasors when possible.

This court has always been reluctant to establish laws or give advisory opinions, especially when unnecessary and broad in scope. See Spears v. Spears, 95 Nev. 416, 596 P.2d 210 (1979); Union Pacific R.R. Co. v. Adams, 77 Nev. 282, 362 P.2d 450 (1961). Although unnecessary to the analysis of this case, the majority opinion states that the economic loss doctrine was never intended to apply to construction projects. While this may be our decision when that issue is presented to us and carefully briefed,

we should refrain from making such broad gratuitous legal statements until properly before this court.

For the reasons stated, I dissent from the majority opinion and would reverse the summary judgment and remand this case for trial.