Rose, C. J.,
dissenting:
I dissent to the application of the economic loss doctrine to construction defect cases. While our prior decisions in this area of the law are neither consistent nor uniformly well reasoned, they do show a clear reluctance to apply the economic loss doctrine to construction defect cases and, in dicta, expressly state just that.
This court first expressed its reluctance to extend the economic loss doctrine to construction defect cases in Oak Grove Investors v. Bell & Gossett Co., 99 Nev. 616, 617, 668 P.2d 1075, 1077 (1983). In Oak Grove, a defective plumbing and heating system caused water leakage and damage throughout an apartment complex. The district court granted summary judgment, concluding that there was no material issue of fact concerning whether the plumbing fitting manufactured by Bell & Gossett was defective and whether the statute of limitations precluded recovery. Id. at 620, 668 P.2d at 1077. We reversed the district court order granting summary judgment, concluding that there were triable issues of material fact as to whether the manufacturer’s failure to warn may have rendered the product defective, and whether the statute of limitations had run. Id. at 625, 668 P.2d at 1081.
Although in Oak Grove the district court did not rule on the applicability of the economic loss doctrine, in dicta .we refused to extend the economic loss doctrine by stating:
the defective plumbing and heating system caused “substantial leakage of water throughout, and damage to, the apartment [sic] within the . . . complex.” The amount of property damage sustained is a question for the finder of fact. Appellant is not seeking to recover purely economic losses, and therefore has stated causes of action in negligence and strict liability.
99 Nev. at 625, 668 P.2d at 1080-81 (citations omitted). While not expansive in its reasoning, the Oak Grove court clearly *280 refused to apply the economic loss doctrine to a construction defect case.
Many years later, in Charlie Brown Construction Co. v. Boulder City, 106 Nev. 497, 797 P.2d 946 (1990), we again rejected the applicability of the economic loss doctrine to construction defect cases, and thereby permitted recovery of tort damages. Although we rejected the economic loss doctrine on the basis that the damages sustained were foreseeable, we expressed a clear intent to permit tort damages in a construction defect case:
Brown and Delta are directly injured parties seeking direct recovery from the tortfeasor. It is not consequential damages they seek but direct damages from the failure to perform a mandatory act. Our citation in [Local Joint Exec. Bd. v. Stern, 98 Nev. 409, 651 P.2d 637 (1982)] to The Restatement (Second) of Torts § 766 (1979) . . . makes it clear that the prohibition does not extend to this circumstance [where city failed to require payment bond that would have secured payment to two subcontractors after general contractor became insolvent].
Id. at 508, 797 P.2d at 953.
Further evidence of this court’s long-standing reluctance to extend the economic loss doctrine to construction defect cases is found in National Union Fire Insurance v. Pratt and Whitney, 107 Nev. 535, 540, 815 P.2d 601, 604 (1991). In Pratt and Whitney, an entire aircraft was destroyed because of a defective engine. Id. at 540, 815 P.2d at 604. While the majority concluded that the economic loss doctrine applied and precluded recovery on tort theories, it carefully explained that it was not overruling the Oak Grove decision and that the economic loss doctrine should not preclude recovery on tort theories in construction defect cases. Id. at 538-39, 815 P.2d at 603. The majority in Pratt and Whitney distinguished construction defect cases, where the economic loss doctrine was not applicable, from those cases involving a “single integrated product that ‘injured itself ”:
The apartment complex [in Oak Grove] consisted of a number of separate apartment units that were each self-contained and constructed for the separate occupancy of the end users. Indeed, this court has not yet entered the fray among courts as to whether even a “house” constitutes a product for purposes of the law of strict products liability, let alone an entire apartment complex. We deem it safe to conclude, however, that the economic loss doctrine was never intended to apply to construction projects that reflect the products and efforts of so many different manufacturers, laborers, crafts, supervi *281 sors and inspectors in the creation of an essentially permanent place of habitation.
Id. at 539, 815 P.2d at 6023 (citation omitted) (emphasis added).
I appreciate the áttempt to establish a clear line of demarcation between contract and to damages in the majority opinion, even though it is difficult in construction defect cases. My concern in doing this is that there will be times where unusual factual situations will fall between the clearly defined recovery theories of contract and tort and leave a homeowner of a defectively constructed home without a remedy. Under the majority’s opinion and the present state of the law, a subsequent purchaser of a condominium with a latent defect created by a subcontractor and found five years after construction will fall in that category if the contractor has gone bankrupt or out of business. This would occur because tort law would be inapplicable because of the economic loss doctrine and contract damages would provide no viable vehicle for recovery because the homeowner is not in privity with the subcontractor, the contractor is defunct and the construction bond long since exonerated. The owner of the defective condominium would have no viable remedy against the subcontractor even though he may be in business and making millions of dollars.
To avoid situations like this from occurring, I see no problem with letting contract and tort theories of recovery apply to construction defect cases as has been done by several states. See Cosmopolitan Homes, Inc. v. Weller, 663 P.2d 1041 (Colo. 1983); Kristek v. Catron, 644 P.2d 480 (Kan. Ct. App. 1982); Keyes v. Guy Bailey Homes, Inc., 439 So. 2d 670 (Miss. 1983); Juliano v. Gaston, 455 A.2d 523 (N.J. Super. Ct. App. Div. 1982); McMillan v. Brune-Harpenau-Torbeck Builders, Inc., 455 N.E.2d 1276 (Ohio 1983); Blake v. Doe, 623 N.E.2d 1229 (Ohio Ct. App. 1993); Moxley v. Laramie Builders, Inc., 600 P.2d 733 (Wyo. 1979). While legal theories of recovery may overlap somewhat in any given construction defect case, I see no practical harm in this. Before recovery can be made, proof that the contractor, subcontractor or supplier was negligent must be established and no plaintiff is entitled to more than one recovery no matter how many theories of recovery may be applicable. See Ambassador Hotel Co. v. Wei-Chuan Inv., 189 E3d 1017 (9th Cir. 1999); Bradford v. Vento, 997 S.W.2d 713 (Tex. App. 1999). My clear preference is to provide a remedy, be it tort or contract, in all construction defect cases whether the loss is considered the result of a breach of contract or negligent conduct. This can be done simply by refusing to apply the economic loss doctrine to construction defect cases.
Moreover, in its sweeping application of the economic loss doc *282 trine, the majority narrows the long-standing exception to NRS 41.033, Nevada’s governmental immunity statute, that this court created in Butler v. Bogdanovich, 101 Nev. 449, 705 P.2d 662 (1985), and reaffirmed in Lotter v. Clark County Board of Commissioners, 106 Nev. 366, 793 P.2d 1320 (1990) and Tahoe Village Homeowners Association v. Douglas County, 106 Nev. 660, 799 P.2d 556 (1990). In the aforementioned cases, we declared that governmental immunity will not bar a tort action against the government if it failed to act reasonably after learning of a hazard. Butler, 101 Nev. at 451, 705 P.2d at 663; Lotter, 106 Nev. at 369, 793 P.2d at 1322; Tahoe Village, 106 Nev. at 662, 799 P.2d at 557-58. In this prior precedent, governmental conduct deemed unreasonable included an inspector’s approval of a contractor’s work with knowledge of its defective condition. See id. Without explicitly overruling Butler, Lotter, or Tahoe Village, the majority eliminates the very loss sought in these type of cases, property damage. Effectively, this line of authority is eliminated by today’s opinion.
The economic loss doctrine is a judicial creation—it is not a statute that we are compelled to follow. It is a principle of law we can adopt or reject depending on what better serves Nevadans. With so much hasty construction taking place in Nevada today, I think the better path would be to arm our home purchasers with all available remedies, when faced with a defectively constructed home, rather than the one taken by the majority today. I respectfully dissent.